UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACK KENNEDY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE; UNITED STATES NATIONAL VISA CENTER; and U.S. EMBASSY IN CAIRO, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 24-cv-11556-DJC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     February 28, 2025

**I.   Introduction**

Plaintiff Jack Kennedy ("Kennedy") has filed this lawsuit *pro se* against Defendants United States Department of State ("State Department"), United States National Visa Center ("NVC") and the U.S. Embassy in Cairo ("Embassy"), (collectively, "Defendants") to demand an "accurate date of interview appointments" and "accurate processing time" for his children's immigrant visa applications.[1]  D. 1-3 at 7.  In addition, Kennedy also demands Defendants to provide a "clear explanation why [his] older son['s] visit visa was declined."  Id.  Defendants moved to dismiss the

---

[1] Kennedy does not specifically invoke the Mandamus and Venue Act ("MVA") in his complaint.  Nevertheless, given that Kennedy is demanding Defendants to take specific agency actions, Defendants "quite reasonably [] interprets [Kennedy's requests as being made] under the MVA for mandamus relief," Kinuthia v. Biden, No. 21-cv-11684-NMG, 2022 WL 17653503, at *6 (D. Mass. Nov. 9, 2022), report and recommendation adopted (Jan. 6, 2023);  D. 7 at 6.

1

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D. 6. For the reasons stated below, the Court ALLOWS the motion to dismiss.

## II.     Standard of Review

### A.     Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court may widen its gaze and look beyond the pleadings to determine jurisdiction. See Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016). Further, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995).

### B.     Dismissal for Failure to State a Claim under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific

inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III. Factual and Procedural Background

The Court draws the following factual allegations from the complaint, D. 1-3, and accepts them as true for the purpose of resolving the motion to dismiss.

Kennedy is a naturalized U.S. citizen who obtained his citizenship in or around 2023. D. 1-3 ¶ 2. Thereafter, Kennedy submitted immigrant visa petition applications on behalf of his children. Id. On September 25, 2023, the applications were transferred from the United States Citizenship and Immigrant Services to the NVC. Id. On November 19, 2023, the NVC approved his children's applications for interviews. Id. Since then, the NVC has not provided his children with interview appointments. Id. Kennedy reached out to the NVC on various occasions to ascertain a time and date for the interviews, but allegedly received vague responses from the agency. Id. Additionally, as alleged, the NVC erroneously responded to one of Kennedy's inquiries about his daughter's application with information about another applicant. Id. ¶ 4. The NVC also allegedly sent an incorrect notification email on March 25, 2024 informing Kennedy that his children's applications were ready to be filled and submitted even though his children's

3

applications had already been approved. Id. ¶ 5. Separately, Kennedy applied for a non-immigrant visa for his older son to visit him in 2022, but the application was allegedly denied by the U.S. Embassy in Cairo without reason. Id. ¶ 7.

Kennedy initiated this action in the Middlesex Superior Court. D. 1-3. Defendants removed the action to this Court. D. 1.

## IV.    Discussion

### A.    Lack of Subject Matter Jurisdiction

The Administrative Procedure Act ("APA") requires that agencies conclude matters before them "within a reasonable time," 5 U.S.C. § 555(b), and allows a court to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). "As an initial matter, the APA 'does not provide an independent source of subject matter jurisdiction.'" Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 108 (D. Mass. 2024) (quoting Conserv. Law Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996)). "At the same time, the [MVA] . . . vests federal district courts with 'original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" Id. at 108–09 (citing 28 U.S.C. § 1361). "Despite their different requirements, the APA and MVA are generally treated as coextensive for purposes of unreasonable-delay claims." Durrani v. Bitter, No. 24-cv-11313-FDS, 2024 WL 4228927, at *2 (D. Mass. Sept. 18, 2024).

Here, Defendants argue that because a court can only compel agency action under the APA if the agency is legally required to take a discrete action, D. 7 at 6 (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)), Kennedy has failed to plead plausibly that the Court has

4

jurisdiction over Defendants "to provide an interview date for his children because no statute or regulation demands [Defendants] to schedule [Kennedy]'s children for an interview on their visa petitions under a specific timeline." Id. Defendants' position is not without legal support. "Section 1202(b) of the Immigration and Nationality Act ("INA") directs that '[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer.'" Durrani, 2024 WL 4228927, at *2 (alterations in original) (citing 8 U.S.C. § 1202(b)). "[O]ther sections of the INA," however, "appear to grant near-total discretion to consular officers to grant or deny visa applications, see 8 U.S.C. §§ 1104(a) and 1201(a), leaving courts divided over whether the INA's provisions create a 'nondiscretionary duty' that establishes jurisdiction under the APA and MVA." Id.

Nevertheless, "[d]istrict courts within this [C]ircuit have 'generally found a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" Ghannad-Rezaie v. Laitinen, No. 24-cv-11665-PBS, 2024 WL 4849587, at *3 (D. Mass. Nov. 21, 2024) (quoting Conley, 731 F. Supp. at 109)). See Durrani, 2024 WL 4228927, at *1–*2 (concluding that there was subject matter jurisdiction to review a plaintiff's unreasonable delay claim under the APA and MVA where the plaintiff's claim was based on allegations of governmental delays in scheduling his mother's visa petition interview). Accordingly, the Court denies the motion to dismiss on Rule 12(b)(1) grounds.

B.      **Unreasonable Delay**

In considering n unreasonably delayed agency action claim, courts often consider the six factors set out in Telecomms v. Rsch. & Action Ctr. V. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (referred to as the "TRAC" factors):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

V.U.C. v. United States Citizenship & Immigration Servs., 557 F. Supp. 3d 218, 223 (D. Mass. 2021).

1.      **First Factor**

"The first TRAC factor is the 'most important.'" Palakuru v. Renaud, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (quoting In re Core Commc'ns Inc., 531 F.3d 849, 855 (D.C. Cir. 2008)). "It requires an inquiry into whether there is 'any rhyme or reason' for the Government's delay – in other words, 'whether the agency's response time . . . is governed by an identifiable rationale.'" Id. at 50–51(quoting Ctr. For Sci. in the Pub. Interest v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). Here, the first factor weighs in Defendants' favor. "In the context of adjudicating visa applications, courts have consistently found that the government follows a 'rule of reason' when petitions are processed, by and large, 'in the order they were filed.'" Durrani, 2024 WL 4228927, at *4 (quoting Memon v. Blinken, 22-cv-0754-CKK, 2023 WL 1438396, at *2 (D.D.C. Feb. 1,

2023)). "Visa interviews are scheduled only after the NVC determines that a file is 'Documentarily Qualified,' subject to the local consular office's availability to conduct the interview." Id. (citation omitted).  Here, Kennedy alleges that because his children's applications have been approved, or "documentarily qualified," since November 19, 2023, they are overdue for interview dates.  D. 1-3 ¶¶ 2, 9.  But an allegation of delays alone "does not reflect a lack of rationality on the part of the government." Durrani, 2024 WL 4228927, at *4  This is because "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" Tate v. Pompeo, 513 F. Supp. 3d 132, 148 (D.D.C. 2021) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)), dismissed sub nom. Charlotte Louise Tate, et al., Appellees v. Antony J. Blinken, Sec'y of the U.S. Dep't of State, et al., Appellants, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021) (granting appellants' motion for voluntary dismissal). As Defendants point out, there is an estimated backlog of 448,285 documentarily qualified applications ready for interview as of June 30, 2024.  D. 7 at 4 (citing Dep't of State report); see Aslam v. United States Dep't of State, No. 2:22-cv-00701, 2023 WL 6163969, at *9 & n.115 (D. Utah Sept. 21, 2023) (noting that courts have taken judicial notice of information concerning visa backlog statistics in considering claims of unreasonable delays in processing visa applications).  Additionally, the U.S. Embassy in Cairo, where Kennedy's children are to be interviewed, is particularly strained because it has been required to process visa applications from Sudan due to the closure of the U.S. Embassy there.  D.

7

7 at 4 (citing U.S. Embassy in Egypt report). Considering these conditions, Kennedy's children are "not in a unique position in" experiencing delays of over a year "waiting for an interview." Durrani, 2024 WL 42289267, at *4.

## 2. Second Factor

The second TRAC factor likewise favors Defendants. Congress has provided no firm timetable for scheduling visa interviews but instead "has given 'agencies wide discretion in the area of immigration processing.'" Arab v. Blinken, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)). 8 U.S.C. § 1571(b) provides that it "is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Id.; D. 7 at 12 n. 6. Defendants correctly note, however, that such language is policy and, accordingly, does not constitute binding law. Id.; see Ghannad-Rezaie, 2024 WL 4849587, at *5 (concluding that the "180 days" language in Section 1571(b) "represent[s] congressional aspirations," not "statutory deadlines"); Kinuthia, 2022 WL 17653503, at *4 (noting that courts regard Section 1571(b) as non-binding). Thus, although this provision reflects "an indication of congressional expectation" regarding the pace of application processing, id., "most courts have 'rejected unreasonably delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b).'" Durrani, 2024 WL 4228927, at *4 (quoting Mohammad v. Blinken, 548 F. Supp. 3d 159, 167 (D.D.C. 2021)). For the reasons discussed above, the second factor also weighs in Defendants' favor.

### 3. Third and Fifth Factors

"The third and fifth TRAC factors are often evaluated together in order to assess 'the interests prejudiced by delay,' including the delay's effect on 'human health and welfare.'" Durrani, 2024 WL 4228927, at *5 (quoting Mohammad, 548 F. Supp. 3d at 168). Here, Kennedy alleges that the delays have caused significant hardship on his and his children's well-being. D. 1-3 ¶ 1. Although the Court appreciates the difficulties a lengthy wait time may impose on Kennedy and his family, his situation is not unique as many others "face similarly difficult circumstances as they await adjudication of their visa applications." Mohammad, 548 F. Supp. 3d at 168 (quoting Palakuru, 521 F. Supp. 3d at 53)). Accordingly, the third and fifth factors do not weigh in Kennedy's favor.

### 4. Fourth Factor

The fourth factor of the TRAC analysis considers "the effect of expediting delayed action on agency activities of a higher or competing priority." TRAC, 750 F.2d at 80. "The D.C. Circuit has consistently emphasized 'the importance of competing priorities in assessing the reasonableness of an administrative delay,' going so far as to refusing to grant relief to petitioners when all factors other than the fourth factor favored the petitioner." Durrani, 2024 WL 4228927, at *5 (quoting Palakuru, 521 F. Supp. 3d at 52). "The fourth factor carries such weight because courts 'have no basis for reordering agency priorities.'" Id. (quoting In re Barr Lab'rys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)). For these reasons, "courts have consistently declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'" Id. (quoting Mashpee, 336 F.3d at 1100).

Likewise here, expediting Kennedy's children's applications would effectively "leapfrog[] [their] application[s] to the front of the line" without improving the general efficiency of the visa application process while harming other applicants. Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020). In his opposition to the motion to dismiss, Kennedy asserts that the long processing time for immigrant visa applications is attributable to Defendants' prioritization of non-immigrant visas and suggests that Defendants should prioritize immigrant visa applications particularly those initiated by U.S. citizens like Kennedy. D. 9 at 3–6. Even as alleged, "the benefits of an immigrant visa – permanent residence – are distinct from those provided by a nonimmigrant visa – only temporary residence." Delta Talent, LLC v. Wolf, 448 F. Supp. 3d 644, 653 (W.D. Tex. 2020). Because immigrant and nonimmigrant visas provide different benefits, the processing of immigrant and nonimmigrant visas entail distinct political priorities implicating "questions of foreign relations" that necessitates judicial deference. Ahmed v. Bitter, 727 F. Supp. 3d 630, 639 (S.D. Tex. 2024) (quoting INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999)). For the reasons articulated above, the fourth factor weighs in Defendants' favor.

### 5. Sixth Factor

"The sixth and final TRAC factor concerns whether there is impropriety behind agency delay," although "[t]he [C]ourt 'need[s] not find any impropriety . . . to hold that agency action is unreasonably delayed.'" Yacoub v. Blinken, No. 21-cv-983-TSC, 2022 WL 4598681, at *6 (D.D.C. Sept. 30, 2022) (quoting TRAC, 750 F.2d at 80)). Here, Kennedy characterizes the NVC's visa processing system as flawed because it previously sent him the wrong information in response to his inquiries and an erroneous notification email. D. 1-3 ¶ 4–5. Even these allegations that the NVC has made some errors in communicating with Kennedy is not a plausible basis to permit an

inference of bad faith or impropriety. See Janay v. Blinken, 743 F. Supp. 3d 96, 118 (D.D.C. July 16, 2024) (explaining that the plaintiff's allegation that the NVC committed some procedural errors in processing his visa application does not provide a plausible basis to conclude that there was bad faith or impropriety for the purposes of considering the sixth TRAC factor). Accordingly, the sixth factor favors Defendants.

### C. Consular Nonreviewability

As to Kennedy's demand that Defendants provide a clear explanation as to why his son's visa was denied, D. 1-3 at 7 ¶ 2, Defendants argue that the Court lacks judicial authority to review a consular officer's denial of visa. D. 7 at 17. "Generally, under the doctrine of consular nonreviewability, courts may not review a consular officer's decision to deny a visa application." Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) (citations omitted). The Supreme Court has, however, "assumed that a narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen.'" Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024) (quoting Trump v. Hawaii, 585 U.S. 667, 703 (2018)). Here, Kennedy contends that the denial of his son's visit visa is reviewable because it infringes on Kennedy's fundamental liberty interest in violation of the Fifth Amendment to the United States Constitution. D. 9 at 1–2. It is well settled, however, that "United States citizens do not possess a protected interest in their reunion with noncitizen family members." Durrani, 2024 WL 4228927, at *7 (citing Muñoz, 602 U.S. at 915–16). Similarly, individuals do not "possess a protected interest in the issuance of an entitlement that may be granted or denied in the government's discretion," such as visas. Id.

(citing Town of Castle Rock v. Gonzalez, 545 U.S. 748, 756 (2005)).  For at least these reasons, dismissal of this request for relief is also warranted.

V.      **Conclusion**

For the foregoing reasons, the Court ALLOWS the motion to dismiss.  D. 6.

**So Ordered.**

/s Denise J. Casper
United States District Judge